# 17-2444-cr(L), 17-4045-cr(CON)

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

JOHN AFRIYIE,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## PETITION FOR REHEARING OR REHEARING EN BANC FOR DEFENDANT-APPELLANT

ROBERT A. CULP
LAW OFFICE OF ROBERT A. CULP
*Attorneys for Defendant-Appellant*
P.O. Box 550
Garrison, New York 10524
(845) 424-4431

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES……………………………....…….…….....…..…….…ii

INTRODUCTION ………...…………………………………………………....1

PRELIMINARY STATEMENT…………………………………………………1

STATEMENT OF THE CASE………………………………………….…..3

A.  District Court Proceedings………………………………………….…..3
B.  Panel Decision……………………………………………………….…..6

ARGUMENT…………………………………………………….…..…...8

I.   The Opinion Disregards the Requirement that Criminal Forfeiture Only Be
     Based On Conduct Found By a Jury Beyond a Reasonable Doubt………...…..8

II.  The Panel's Holding that Lawful Appreciation Under Subsection 981(a)(2)(B)
     Is Forfeitable Is Untenable Under the Statute, Conflicts With Other Circuits
     and Settled Principles of Statutory Construction…………………………….12

A.  The "Derived From" Language in Section 981(a)(1)(C) Cannot Supersede
     Congress' Distinctions in Defining "Proceeds."…………………….…..12
B.  The Panel's Approach Conflicts With Decisions of This Court
     and Other Circuits………………………………………………………...14
C.  The Decision Disregards the Rule of Lenity…………………………16

CONCLUSION……………………………………………….……….…...17

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Apprendi v. New Jersey,* 530 U.S. 466 (2000)……………………………………………….10

*Lagos v. United States,* 138 S.Ct. 1684 (2018)………………..…………………....6

*Libretti v. United States,* 516 U.S. 29 (1995)………………....………………....10

*Liparota v. United States,* 471 U.S. 419 (1985)…………………………………..…...17

*Rabin v. Wilson Coker*, 362 F.3d 190 (2d Cir. 2004)……………………………...16

*SEC v. MacDonald*, 699 F.2d 47 (1st Cir. 1983)………………………………...…15

*SEC v. Patel,* 61 F.3d 137 (2d Cir. 1995)………..……………………..……….15

*Southern Union Co. v. United States,* 567 U.S. 343 (2012)………………….…….…...10

*United States v. Afriyie,* 929 F.3d 63 (2d Cir. 2019)……………………………….1

*United States v. Bader,* 678 F.3d 858 (10th Cir.2012)……………………………...8

*United States v. Banco Cafetero Panama,* 797 F.2d 1154 (2d Cir.1986)……………….…16

*United States v. Barnes*, 158 F.3d 662 (2d Cir. 1998)……………………………....9

*United States v. Booker,* 543 U.S. 220 (2005)……………………………………….10

*United States v. Canales,* 91 F.3d 363 (2d Cir. 1996)………………………...………...16

*United States v. Capoccia*, 503 F.3d 103 (2d Cir. 2007)……………......……..…..1,6,8-11

*United States v. Chestman*, 947 F. 2d 551 (2d Cir. 1991) (en banc)………...………...…6

*United States v. Contorinis*, 692 F.3d 136 (2d Cir. 2012)………………………....13,14-15

*United States v. Garcia–Guizar,* 160 F.3d 511 (9th Cir.1998)………………………...9

*United States v. George*, 886 F.3d 31 (1st Cir. 2018)……………………………..…..15

*United States v. Mahaffy*, 693 F.3d 113 (2d Cir. 2012)……………....………...14-15,17

*United States v. Nacchio*, 573 F.3d 1062 (10th Cir. 2009)……………………………...15

*United States v. Santos,* 553 U.S. 507 (2008)…………………………………………..16

*United States v. Stevenson,* 834 F.3d 80 (2d Cir. 2016)…………………………………10

*United States v. Sturdivant*, 244 F.3d 71 (2d Cir. 2001)………………………...…...1,9

*United States v. Walsh*, 712 F.3d 119 (2d Cir. 2013)…………………………………..16

## Statutes, Rules. Treatises

17 C.F.R. § 240.10b-5……………………………………………...…………...…..1

15 U.S.C. §§ 78j(b), 78ff………………………………………………...………....1

18 U.S.C. § 981(a)(1)(C)…………………………………………...………..2,6-7,12-17

18 U.S.C. § 981(a)(2)(A)……………………………………………..…….2,6-7,12-17

18 U.S.C. § 981(a)(2)(B)……………………………...………………………..2,6-7,12-17

18 U.S.C. § 1343…………………………………………………………………1

18 U.S.C. § 1956(a)(1)………………………………………………………....16

Fed.R.App.Pro. 35,40……………………………………………………………1

Fed. R. Evid. 701,702…………………………………………………………..6

# INTRODUCTION

Pursuant to Rules 35 and 40 of the Federal Rules of Appellate Procedure, John Afriyie petitions for rehearing or rehearing *en banc* of the Panel's July 8, 2019 Opinion and Order (annexed, hereafter, "Op.__") affirming his conviction and sentence (other a remand on restitution) of one count each of securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff & 17 C.F.R. § 240.10b-5 and wire fraud in violation of 18 U.S.C. § 1343. *See United States v. Afriyie,* 929 F.3d 63 (2d Cir. 2019).

# PRELIMINARY STATEMENT

This insider trading case raises important questions of overbroad application of criminal forfeiture statutes, based on transactions never adjudicated by the jury beyond a reasonable doubt, and in derogation of the statutory definition of forfeitable proceeds.

First, this Court, joining other courts of appeal, has held that "[t]he violation on which the forfeiture is based must be the specific violations of which [defendant] was convicted, not some other, separate…violations." *United States v. Capoccia*, 503 F.3d 103 (2d Cir. 2007). Here, the charges included multiple unspecified transactions in singular counts. The jury was told it could convict on any transaction and no special verdict was taken. On appeal, Afriyie pressed whether such a general verdict permitted the district court to determine sentencing and forfeiture on the bases of all the transactions at issue, or whether the court was limited to the least remunerative offense under *United States v. Sturdivant*, 244 F.3d 71 (2d Cir. 2001).

1

The Panel held that the district court could independently calculate sentencing loss under the Guidelines, Op.18, but disregarded this issue as to forfeiture. Under *Capoccia* forfeiture can only be based on transactions as to which the jury *convicted*. A verdict on the criminal charges was permitted on the basis of one transaction with no special verdict, and did not justify sweeping forfeiture as to all transactions. The government's belated argument, that this was permitted because the case involved a "continuing scheme" is untenable because this "continuing scheme" was not charged in the indictment nor instructed to the jury. In the end, criminal forfeiture was premised on transactions never adjudicated by a jury beyond a reasonable doubt.

Secondly, this case involves an important conflict over construction of the principal criminal forfeiture statute, 18 U.S.C. § 981. Addressing a novel issue, the Panel held that in cases of otherwise lawful activity such as securities trading, criminal forfeiture under 18 U.S.C. § 981 extends beyond "proceeds" to lawful appreciation in accounts containing proceeds. This is at odds with the statute's limitation of "proceeds" in such cases to "money acquired through the illegal transactions." 18 U.S.C. § 981(a)(2)(B). Although the Opinion invokes 18 U.S.C. § 981(a)(1)(C) authorizing forfeiture of "property…derived from proceeds traceable to a violation," this overrides the definition of "proceeds," rendering it meaningless. The decision conflicts with decisions of this Court and other circuits emphasizing that the definition of "proceeds" defines the scope of forfeiture, as well as settled principles requiring ambiguous statutes to be construed in a defendant's favor.

2

## STATEMENT OF THE CASE

**A.      District Court Proceedings**

1.      As detailed in the Panel Opinion, appellant John Afriyie was a research analyst at MSD Capital ("MSD"), a multi-strategy investment firm with separate groups that invest in public equities, debt, real estate, energy and private capital. Afriyie was assigned exclusively to public equities. *See* Op.4

In January 2016, private equity firm Apollo Global Management contacted the private capital unit at MSD about possibly financing a potential acquisition of ADT Corp, a publicly traded security and alarm company.  MSD and Apollo dealt at arms-length from January 27th to about February 2nd. Apollo met once with MSD and agreed to provide research about the potential transaction pursuant to a confidentiality agreement. Within a week MSD declined to participate in the potential transaction. Op.3-4.

The government alleged that Afriyie traded on material non-public information in ADT options: (1) after MSD distributed a "potential restriction" email on January 27th about Apollo's interest in a "U.S. listed alarm monitoring services company" although it did not identify ADT;  (2) after Afriyie accessed on February 2nd Apollo's research on ADT on MSD's shared research drive following another restriction email this time identifying ADT.  Op.4-5.

On February 16th, Apollo announced its intention to acquire ADT for $42 dollars a share, a 56% premium.  ADT's shares rose 47.5%.  Shortly thereafter, John

3

sold his call options in ADT and reinvested substantially all the proceeds in other stock options that were also profitable. The account appreciated from $1.53 million to $2.7 million, generating $1.2 million in undisputedly lawful trading in a two-month period. Op.5-6.

Afriyie's good faith defense at trial emphasized, *inter alia,* that (1) the initial January 28 trades predated the identification of ADT (Op.5); (2) January 29 press reports indicated that Apollo could not secure financing for transactions it was pursuing (Tr.488,A273-74,GX-904); (3) Apollo's research documents accessed on February 2, 2016 were made freely available on MSD's research drive (Op.5) despite MSD's covenant in its confidentiality agreement with Apollo (not circulated to Afriyie) to only disclose confidential information on a need-to-know basis (A288-312,GX-105); (4) On February 2, ADT had poor quarterly results (Tr.546). These factors among others called for the jury to weigh the various trades according to shifting factual settings and theories of liability.

2.      As relevant here, the jury trial was bifurcated between a merits portion and a forfeiture portion, both held before the same jury. The securities and wire fraud counts both indiscriminately lumped all of Afriyie's trades into single counts without identifying them individually (DD#11;indictment) and even though the facts and good faith defense countenanced differing arguments of liability as to different transactions. The government sought a unanimity instruction (Tr.630) that allowed the jury to convict on any one trade if they were unanimous and allowing them to not

4

consider any other trades. (Tr.1002-03,1006). Although the defense suggested a special verdict form (Tr.706), the court deemed it unnecessary, and the jury returned general verdicts. As the district court affirmed:

> the government has chosen, at the guilt stage, to have me instruct the jury, which is legally correct, that they can return a guilty verdict based on a single transaction as to which all of the elements are met. *What [this] means is that it does not follow that after a verdict of guilt means that the jury has found that each of the options trades was an act of insider trading. They may have or they may not have.* (Tr. 896)(emphasis added).

In colloquy before the forfeiture trial, the defense argued that the prosecution secured its criminal conviction (only needing the jury to find as to one transaction) and was exploiting the preponderance standard to extract additional punishment via forfeiture. The defense argued the impropriety of instructing the jury to evaluate forfeiture liability potentially in the first instance under the civil standard of proof without first finding that transaction beyond a reasonable doubt. (Tr. 1023-1027). Although forfeiture tracing is conducted under the preponderance of the evidence standard, the defense sought the beyond a reasonable doubt standard because of the general verdict at the merits trial. (Tr.1034-35).

These objections were overruled and the jury was instructed to consider all trades under the civil standard and without regard to whether the transactions had been found beyond a reasonable doubt in the merits verdict. Under these circumstances, the jury found the entire $2.68 million amount forfeitable. This included the lawful appreciation of the original ADT proceeds that Afriyie had

reinvested. After making adjustments to reflect basis in the investment and the addition of substitute assets, the district court ordered forfeiture in the amount of $2,780,720.02. Op.6.

## B.    **Panel Decision**

The Panel affirmed other than to remand for reconsideration of restitution in light of *Lagos v. United States*, 138 S.Ct. 1684 (2018). Op.24-25.[1] With respect to sentencing, Afriyie argued that where the jury returned a general verdict on a duplicitous count, and no special verdict was secured that sentencing and forfeiture must be based on the least remunerative offense under *United States v. Sturdivant*, 244 F.3d 71 (2d Cir. 2001). The Panel explicitly rejected this argument as to loss under the Guidelines, holding that the district court could make its own determination. Op.16-18. But as to forfeiture, curiously, the Panel disregarded Afriyie's argument under *United States v. Capoccia*, 503 F.3d 103 (2d Cir. 2007) and other caselaw mandating that "[t]he violation on which the forfeiture is based must be the specific violations of which [defendant] was convicted, not some other, separate…violations."

The Panel also upheld the forfeiture judgment against Afriyie's contention that untainted appreciation of the ADT proceeds was not forfeitable. Acknowledging this

---

[1] The Panel rejected claims not raised on this Petition, including that (1) the jury charge was incompliant with *United States v. Chestman*, 947 F.2d 551 (2d Cir. 1991), Op.8-10; (2) did not properly convey the good faith defense and the government's burden of disproving good faith, Op.10-11; (3) and that in violation of Fed.R.Evid 701,702 the court improperly permitted lay expert testimony of an MSD officer in "his experience" and "colored by his specialized knowledge." Op.11-16.

to be undecided in this Circuit, the Court rejected reliance on subsection 981(a)(2)(B) which limits "proceeds" in insider trading cases to "the amount of money acquired through the illegal transactions" and does not include property obtained "indirectly" as in other forfeiture cases such as drug cases under subsection 981(a)(2)(A). The Court cited subsection 981(a)(1)(C) providing for forfeiture of property "derived from proceeds traceable" to the offense and rejected the argument that this would render the proceeds definition in subsections 981(a)(2) meaningless. The Court also rejected the argument that the rule of lenity should apply. Op.19-23.[2]

---

[2] The Court also rejected the argument that before testifying at the forfeiture trial, Afriyie was improperly threatened with perjury were he to testify. Although the government had no idea what Afriyie would testify to before issuing the threat the Panel found insufficient evidence of bad faith. Op.24.

**ARGUMENT**

*En banc* review is needed to maintain uniformity of the Court's decisions and because the case involves matters of exceptional importance to the scope of the criminal forfeiture statutes. Panel rehearing is warranted due to misapprehension of governing law and record evidence.

**I.**     **The Opinion Disregards the Requirement that Criminal Forfeiture Only Be Based On Conduct Found By a Jury Beyond a Reasonable Doubt.**

This Court, joining other courts of appeal, has held that criminal forfeiture may only be based on conduct found by a jury beyond a reasonable doubt. As this Court held in *United States v. Capoccia*, 503 F.3d 103 (2d Cir. 2007), "[t]he violation on which the forfeiture is based must be the specific violations of which [defendant] was convicted, not some other, separate … violations." This is in accord with other circuits. *E.g., United States v. Bader,* 678 F.3d 858, 894 (10th Cir.2012) ("There must be a nexus between the property forfeited and *an offense of conviction* that authorizes forfeiture.")(emphasis original); *United States v. Garcia–Guizar,* 160 F.3d 511, 518 (9th Cir.1998) ("only…proceeds of the conduct for which Garcia was actually convicted is properly subject to criminal forfeiture...") The Panel's decision fails to adhere to these principles.

Afriyie was convicted on two singular counts of securities and mail fraud. The counts were duplicitous in that they incorporated multiple transactions at different times of the unfolding of the ADT matter, and implicated different arguments for

8

liability. The government secured a unanimity instruction which required the jury to be unanimous as to an individual trade, but without mandating the jury to go any further than a single trade. As the district court noted during the charge conference:

> the government has chosen, at the guilt stage, to have me instruct the jury, which is legally correct, that they can return a guilty verdict based on a single transaction as to which all of the elements are met. *What [this] means is that it does not follow that after a verdict of guilt means that the jury has found that each of the options trades was an act of insider trading. They may have or they may not have.*" (Tr. 896)(emphasis added).

Under *United States v. Sturdivant*, 244 F.3d 71 (2d Cir. 2001), a sentencing court cannot assume without a special verdict, that a jury deliberating a count with multiple bases of conviction, necessarily convicted on any more than one such basis:

> Where, as here, a defendant has already been convicted on a count charging two distinct offenses, and the jury's verdict is only demonstrably unanimous with respect to one of those offenses, … [t]he district court must give defendant the benefit of the verdict's ambiguity and sentence him assuming that he was convicted of the transaction involving the lower drug quantity….

*Id.* at 80. *See also United States v. Barnes*, 158 F.3d 662 (2d Cir. 1998)(defendant convicted of multi-prong drug conspiracy without special verdict must be sentenced within most lenient applicable statutory range).

Under *Capoccia* and *Sturdivant* the court should only have directed forfeiture as to the least remunerative trade undertaken by Afriyie. There was no basis to authorize forfeiture as to all trades because the jury verdict at the merits portion of the trial allowed conviction as to only one trade and the forfeiture portion of the trial was

governed by the preponderance standard.[3]  Although criminal forfeiture is permitted

according to a civil preponderance standard this is because it constitutes an additional

penalty for the offense of conviction, not because it provides a separate basis for

evaluating liability.  *E,g., Capoccia,* 503 F.3d at 115-16.  Accordingly, there was no basis

for ordering forfeiture as to all transactions at issue, when the jury at the merits

portion of the trial was permitted to convict on the basis of one transaction alone.

Indeed, this case strongly implicates the Supreme Court's decisions in *Apprendi*

*v. New Jersey,* 530 U.S. 466 (2000) and *United States v. Booker,* 543 U.S. 220 (2005)

holding under the Sixth Amendment that any fact mandating an increase in

punishment must be stipulated by plea or found by the jury beyond a reasonable

doubt.  Although the Supreme Court held that there is no Sixth Amendment right to a

jury determination as to forfeiture in *Libretti v. United States,* 516 U.S. 29, 48-49 (1995)

*Libretti* predates the *Apprendi-Booker* line of cases and is called into grave question, by

*Southern Union Co. v. United States,* 567 U.S. 343 (2012),  which applies *Apprendi* and

*Booker* to criminal fines.  To be sure, this Court rejected an attempt to apply *Southern*

*Union* to criminal forfeiture in *United States v. Stevenson,* 834 F.3d 80,84-87 (2d Cir.

2016) but there are critical distinctions between *Stevenson* and this case.  *Stevenson*

distinguished *Southern Union* on the ground that the fine in *Southern Union* was based

on the number of days the company was found in violation of the statute, and the jury

---

[3] The Panel recognized the authority of the district court to make its own calculation
of loss under the Guidelines. Op.18. But forfeiture is not a discretionary finding under
advisory Guidelines.

was only asked to determine whether a violation occurred, not the number of days. That is exactly the situation here where the jury was only asked to find one trade in violation and never determined beyond a reasonable doubt that all trades were in violation. In *Stevenson* on the other hand, the defendant was actually charged and convicted with accepting bribes in the amount of $22,000 which was the amount of the forfeiture order, so there was no issue in connecting the jury verdict to the forfeiture.

In the briefing below, the government claimed that "where…the defendant engaged in a continuing scheme, the amount derived from the entire scheme is forfeitable, and is not limited to the substantive counts of which the defendant was convicted." Govt.Brief on Appeal 54. But here the conviction was *not* for executing a continuing scheme. The indictment never charged a "continuing scheme" nor was the jury instructed to so find. Indeed, in *Capoccia* the Court emphasized that forfeiture is established, "[w]here the *conviction itself* is for executing a scheme…" as opposed to an offense based on "individual instances of transferring stolen money." 503 F.3d at 117-18 (emphasis added). If "continuing scheme" is the answer, then under *Capoccia* as well as *Southern Union,* Afriyie had every right to insist that his jury, not the district judge, make the determination beyond a reasonable doubt.

11

## II.   The Panel's Holding that Lawful Appreciation Under Subsection 981(a)(2)(B) Is Forfeitable Is Untenable Under the Statute, Conflicts With Other Circuits and Settled Principles of Statutory Construction.

The Panel also held that the entire $2.68 million held in account by Mr. Afriyie was forfeitable even though only $1.53 million represented proceeds of ADT trades, the remainder constituting earnings through lawful reinvestment.   The opinion conflicts with the definition of proceeds in the statute, the Supreme Court's required approach to resolving statutory ambiguity, and the importance placed upon the definition of proceeds by this and other circuits.

### A.   The "Derived From" Language in Section 981(a)(1)(C) Cannot Supersede Congress' Distinctions in Defining "Proceeds."

The applicable forfeiture statute, 18 U.S.C. § 981(a)(2), defines "proceeds" subject to forfeiture according to whether the case involved inherently illegal activity or lawful activity undertaken in an illegal manner:

> (A) In cases involving illegal goods, illegal services, unlawful activities, … the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

> (B) In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. …

Here, it was undisputed that subsection (B) applied because insider trading consists of "lawful goods or services that are sold or provided in an illegal manner." *E.g., United States v. Contorinis*, 692 F.3d 136, 145 n.3 (2d Cir. 2012)("§ 981(s)(2)(B) supplies the definition of 'proceeds' in cases involving the purchase or sale of securities."). Since subsection (B) applies, proceeds constitute "the amount of money acquired through the illegal transactions."

There is no dispute that while the ADT earnings were "proceeds," the subsequent, untainted account appreciation was *not* "the amount of money acquired through the illegal transactions." If subsection (*A*) applied, such funds might well be "property of any kind obtained directly or *indirectly*, as the result of the commission of the offense…" (emphasis added). But this language only applies to "illegal" goods and services under subsection (A), not to legal services provided in an illegal manner as under subsection (B).

This Panel's Opinion, while conceding that the lawful account appreciation did not represent "proceeds" under subsection (B) nonetheless holds such lawful appreciation to be forfeitable because it was "derived" from proceeds under 18 U.S.C. § 981(a)(1)(C). Under this provision, a criminal defendant convicted of insider trading must forfeit "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable" to the offense. Op.21-22.

But such a reading disregards the statute's distinction between the two definitions of "proceeds" in subsection 981(a)(2). Plainly Congress intended a

13

broader measure of "indirect" obtaining of proceeds only to apply as to inherently illegal activity under subsection 981(a)(2)(A). This Congressional design would be frustrated through facile application of the "derived from proceeds traceable" language in 18 U.S.C. § 981(a)(1)(C). Were it so, the government need only take "indirectly" obtained proceeds and relabel them "derived from proceeds traceable" to subvert Congress' will.

**B.** **The Panel's Approach Conflicts With Decisions of This Court and Other Circuits.**

This Court has rejected attempts by the government to defang the distinctions made by Congress in subsections 981(a)(2)(A)-(C). In *United States v. Mahaffy*, 693 F.3d 113,138 (2d Cir. 2012), an insider trading case, this Court rejected the government's contention that the charged conduct fell under subsection 981(a)(2)(A) rather than under subsection 981(a)(2)(B) and consequently that gross proceeds rather than net proceeds were forfeitable. The Court rejected the government's statutory argument because it would leave so few federal violations covered by subsection 981(a)(2)(B) as to render it "essentially meaningless." *Id.*

In examining the scope of forfeiture in insider trading cases, courts look to the definition of proceeds in § 981(a)(2)(B), not vague notions of derivation or "traceability." In *Contorinis*, 692 F.3d at 145 n.3, this Court again held that net rather than gross proceeds are forfeitable in securities fraud cases and that "the proper measure of forfeiture... is...under § 981(a)(2)(B)")(quoting *Mahaffy,* 693 F.3d at 138).

14

The Court emphasized that "the only money that should be subject to forfeiture in an insider trading case is *money acquired* when shares are traded based upon inside information at a gain." *Id.* (emphasis added). Similarly, in U*nited States v. Nacchio*, 573 F.3d 1062,1088 (10th Cir. 2009) the Tenth Circuit held that "forfeiture should be calculated under § 981(a)(2)(B) as 'the amount of money acquired ... less the direct costs incurred.'" Such cases do not allow proceeds to include property acquired indirectly as a result of the criminal activity in question.

In *United States v. George*, 886 F.3d 31, 40 (1ˢᵗ Cir. 2018) (Souter, former Supreme Court Justice on panel) the First Circuit emphasized that "the classification of an offense [under section 981(a)(2)] can have a profound effect on the amount that may be subject to forfeiture in a particular case." The Court noted that "981(a)(2)(B), does not explicitly render property forfeitable if that property is an indirect fruit of the crime." *See also SEC v. MacDonald*, 699 F.2d 47 (1st Cir. 1983)(disgorgement did not include additional profits that accrued after disclosure); *SEC v. Patel,* 61 F.3d 137,139 (2d Cir. 1995)(relying on *McDonald*).

The common thread in these cases is the determination that the scope of forfeiture is defined by the applicable definition of "proceeds" in subsection 981(a)(2).[4] These decisions, including of this Court, adopt a different perspective than

---

[4] The "derived from proceeds traceable" language in § 981(a)(1)(C) seems obviously intended to allow forfeiture where proceeds are used to acquire different property, not where funds are lawfully invested and appreciate in value. Where tainted assets are used to purchase other assets, the new assets are forfeitable, but only to the extent of

the Panel decision here, one that honors the critical distinction between the two

paragraphs in subsections 981(a)(2)(A) and (B).

## C.    The Decision Disregards the Rule of Lenity.

At minimum, the Panel should have resolved any ambiguity in the construction

of the statute in appellant's favor under the rule of lenity.  The Panel's conclusion that

there was no ambiguity (Op.23) is at odds with the real conflict between the

definitions of proceeds in subsection 981(a)(2) and the "derived from" language in

subsection 981(a)(1)(C).  In situations such as this the Supreme Court and this Court

have long held that a defendant should not be "subjected to punishment that is not

clearly prescribed" by statute.  *United States v. Santos,* 553 U.S. 507 (2008)(ambiguity

whether "proceeds" under 18 U.S.C. § 1956(a)(1) referred to net profits or gross

receipts strictly construed in favor of net figure).   Any "ambiguity over which penalty

should apply" must be resolved in the least severe penalty.  *United States v. Canales,* 91

F.3d 363, 367 (2d Cir. 1996).

It would be peculiar for Congress to draw the distinctions between subsections

(A) and (B) of § 981(a)(2) if both provisions could reach the same result. *Rabin v.*

*Wilson Coker*, 362 F.3d 190, 196 (2d Cir. 2004) ("if the drafters choose to use one

word in part of a statute and omit it in another, it is generally presumed that Congress

---

the tainted assets.  For example, in *United States v. Walsh*, 712 F.3d 119 (2d Cir. 2013),
the Court described the applicable approach as one which "consider[s] 'traceable
proceeds' to be any one withdrawal, or any asset purchased with such withdrawal, *to
the extent of' the amount of the deposited tainted funds*." *Id.* at 124 (emphasis added; quoting
*United States v. Banco Cafetero Panama,* 797 F.2d 1154,1159 (2d Cir.1986)).

16

acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotations omitted)). *See Mahaffy,* 693 F.3d at 138.

In comparable situations involving portions of a statute in conflict, the Supreme Court strictly construes the conflict in the defendant's favor. In *Liparota v. United States,* 471 U.S. 419,429 (1985), for example, the Supreme Court rejected the government's statutory argument based on different provisions because it "would lead to the demise of the very distinction that Congress is said to have desired" and allow the government to proceed as it pleased as if the distinction was never drawn. By the same token, here, if all the government need do is cite the "derived from language" in subsection 981(a)(1)(C) then the distinctions in subsection 981(a)(2) will have suffered a similar demise. In order that the statutory distinctions have any meaning the rule of lenity requires a construction in the defendant's favor.

## CONCLUSION

The petition for rehearing or for rehearing *en banc* should be granted.

Dated:      Garrison, New York
            August 29, 2019          Respectfully submitted,
                                     ,
                                     s/Robert A. Culp
                                     Law Offices, Robert A. Culp
                                     29 Garrison's Landing, P.O. Box 550
                                     Garrison, New York  10169
                                     (845) 424-4431

                                     Counsel for John Afriyie

17

<u>Appendix</u>

<u>Opinion and Order:</u>

*United States v. Afriyie*,

#17-2444(L), 17-4045

(2d Cir. July 8, 2019)

17-2444 (L)
*United States v. Afriyie*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2018

(Argued: November 14, 2018                    Decided: July 8, 2019)

Docket Nos. 17-2444, 17-4045

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

JOHN AFRIYIE,

*Defendant-Appellant*.

_____

Before: JACOBS, POOLER, and WESLEY, *Circuit Judges*.

John Afriyie appeals from a judgment of conviction entered on July 28,

2017, an order of forfeiture entered on July 27, 2017, and a restitution order

entered on December 11, 2017, by the United States District Court for the

Southern District of New York (Paul A. Engelmayer, *J*.), following a one-week

jury trial. The jury found Afriyie guilty of both counts with which he was charged: (1) securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5, and (2) wire fraud, in violation of 18 U.S.C. § 1343. Afriyie was sentenced principally to 45 months' imprisonment, to be followed by three years' supervised release. The district court imposed forfeiture in the amount of $2,780,720.02 and restitution in the amount of $663,028.92.

We affirm the judgment of conviction, finding no error in the district court's jury instructions, admission of lay testimony, and calculation of loss. We hold that, as a matter of law, forfeiture is not limited to the amount of funds acquired through illegal transactions in an insider-trading scheme; rather, forfeiture may extend to appreciation of those funds. We therefore affirm the forfeiture calculation and order in this case. Because *Lagos v. United States*, 138 S. Ct. 1684 (2018), decided after Afriyie's sentencing, addresses the categories of fees recoverable under the Mandatory Victims Restitution Act, limited remand to recalculate restitution is appropriate.

Affirmed in part, vacated in part, and remanded.

_____

ROBERT A. CULP, Garrison, N.Y., *for Defendant-Appellant*.

2

> EDWARD A. IMPERATORE, Assistant United States Attorney (Christine Magdo, Daniel B. Tehrani, Assistant United States Attorneys), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, N.Y., *for Appellee*.

POOLER, Circuit Judge:

John Afriyie appeals from a judgment of conviction entered on July 28, 2017, an order of forfeiture entered on July 27, 2017, and a restitution order entered on December 11, 2017, by the United States District Court for the Southern District of New York (Paul A. Engelmayer, *J.*), following a one-week jury trial. We affirm the judgment of conviction, finding no reversible error in the district court's jury instructions, admission of lay testimony, and calculation of loss. We hold that, as a matter of law, forfeiture is not limited to the amount of funds acquired through illegal transactions in an insider-trading scheme; rather, forfeiture may extend to appreciation of those funds. We therefore affirm the forfeiture calculation and order in this case. Because *Lagos v. United States*, 138 S. Ct. 1684 (2018), decided after Afriyie's sentencing, addresses the categories of fees recoverable under the Mandatory Victims Restitution Act, we vacate the restitution order and remand for the district court to recalculate restitution.

## BACKGROUND

In January 2015, Afriyie began working as an investment analyst for MSD Capital ("MSD"). As an investment analyst, Afriyie researched potential investments for MSD and made recommendations regarding those investments. MSD barred its employees from trading in any individual securities from their own accounts.

In January 2016, Apollo Global Management ("Apollo"), a private equity firm, was considering acquiring ADT Corp. ("ADT"), a publicly traded company in the home security and alarm industry. Apollo contacted several investment firms, including MSD, to raise capital in order to make this acquisition. After MSD expressed an interest in investing, Apollo agreed to provide MSD with material nonpublic information ("MNPI") about the ADT deal.

Around this time, MSD's compliance department sent a "potential restriction" email to its investment professionals. The email indicated that MSD would receive MNPI about a "U.S. listed alarm monitoring services company" because of a "financing opportunity in connection with a potential take-private transaction by . . . Apollo Global" that was "expected to close in [the first half of]

2016." App'x at 186-87; Trial Tr. at 473-77, ECF No. 109.[1] Afriyie received this email.

The next morning, on January 28, Afriyie accessed the ADT and Apollo research folders on MSD's shared drive. After doing so, he purchased his first ADT call option. That afternoon, MSD added ADT to its list of "restricted" securities, and Afriyie received an email to this effect. Taken together, the restriction emails Afriyie received informed him that Apollo was planning to acquire ADT. The next day, Afriyie purchased an additional 35 ADT call options. On February 2, although he was not assigned to work on the ADT project, Afriyie accessed documents specific to the Apollo-ADT deal stored on MSD's shared drive. He subsequently purchased over 2,000 additional ADT call options over the course of the ensuing two weeks.

On February 16, Apollo publicly announced its planned acquisition of ADT. ADT's stock price rose by 47.5%, and the value of Afriyie's investment in ADT call options increased by 6,000% in one day. Over the course of the following week, Afriyie sold his options for a total profit of $1,564,071.60. In late

---

[1] All ECF citations are to the district court docket, *United States v. Afriyie*, No. 16-cr-377 (S.D.N.Y. Feb. 27, 2017).

5

February and March 2016, he wired a portion of the proceeds out of his brokerage account and into a separate savings account.

Afriyie was arrested and released on bail on April 13, 2016. Two days later, he changed the name on the email address associated with the brokerage account from his own name to his mother's name and later deactivated the email account. Afriyie also called TD Ameritrade and, on several occasions, pretended to be his mother on the phone.

On June 1, 2016, an indictment was filed charging Afriyie with two counts of criminal activity stemming from trading on MNPI obtained from his employer. Count One charged him with securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5. Count Two charged him with wire fraud, in violation of 18 U.S.C. § 1343. Following a week-long trial, a jury found Afriyie guilty of both counts. The district court sentenced him principally to a term of 45 months' imprisonment, followed by three years' supervised release, and it imposed forfeiture in the amount of $2,780,720.02 and restitution in the amount of $663,028.92. Afriyie is serving his sentence.

## DISCUSSION

On appeal, Afriyie primarily argues that 1) there was reversible plain error in the district court's jury instructions; 2) the district court plainly erred in admitting certain lay testimony; 3) the district court erred in calculating the loss and forfeiture amounts; and 4) remand in order to recalculate restitution is appropriate. For the following reasons, we reject Afriyie's first three arguments. However, as the government concedes, limited remand for recalculation of restitution is appropriate in light of *Lagos v. United States*, 138 S. Ct. 1684 (2018), decided after Afriyie's sentencing.

### I. Jury Instructions

"We review challenged jury instructions *de novo* but will reverse only if all of the instructions, taken as a whole, caused a defendant prejudice." *United States v. Bok*, 156 F.3d 157, 160 (2d Cir. 1998). It is the defendant's burden to show prejudice. *United States v. Nektalov*, 461 F.3d 309, 313-14 (2d Cir. 2006) (internal quotation marks omitted). "[A] jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Bok*, 156 F.3d at 160 (internal quotation marks omitted).

7

First, Afriyie argues that the district court committed plain error[2] in failing to explain to the jury what constitutes a fiduciary duty under the legal standard set forth in *United States v. Chestman*, 947 F.2d 551 (2d Cir. 1991). Under *Chestman*, "a person violates [17 C.F.R. § 240.10b-5] when he misappropriates material nonpublic information in breach of a fiduciary duty or similar relationship of trust and confidence and uses that information in a securities transaction." *Id.* at 566.

At the charge conference, Afriyie did not object to the district court's proposed instruction regarding fiduciary relationship, which the court had issued to the parties in advance of the meeting. Accordingly, we review only for plain error. *See United States v. Crowley*, 318 F.3d 401, 412 (2d Cir. 2003). At trial, the district court instructed the jury:

> In order to find that the government has established . . . that the defendant engaged in an insider trading scheme, you must find that the government has proven beyond a reasonable doubt each of the following two factors, that taken together, constitute an insider trading scheme under the federal securities law. The two facts are as follows:
>
> One, that the defendant had a relationship of trust and confidence with MSD Capital;

---

[2] "To establish plain error, the defendant must establish (1) error (2) that is plain and (3) affects substantial rights." *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007).

Two, that the defendant violated his duty of trust and confidence by using material, nonpublic information that he obtained by virtue of his relationship with MSD Capital to trade ADT securities for his own personal benefit.

Now, in order for you to establish the first factor concerning the existence of a relationship of trust and confidence, you must welcome all of the facts and circumstances and ask whether both the defendant and MSD Capital recognized that their relationship involved trust and confidence.

App'x at 52-53.

Afriyie argues that the district court's instruction failed to explain what constitutes a fiduciary duty or similar relationship of trust and confidence, omitted the key elements of reliance and de facto control, and failed to instruct the jury that there can be no breach absent a duty to disclose. An express agreement of confidentiality may establish fiduciary status. *See Chestman*, 947 F.2d at 571. Afriyie does not dispute that on his first day of employment with MSD, he signed a confidentiality agreement. The agreement stated: "I understand that my employment with MSD creates a relationship of confidence and trust between MSD and me." Trial Tr. at 192, ECF No. 101. Afriyie presented no evidence to counter this agreement or to indicate that he lacked a fiduciary or other similar relation of trust and confidence with MSD. Accordingly, any error in the district court's instruction did not result in prejudice; viewing the charge

9

actually given as a whole, *see United States v. Feliciano*, 223 F.3d 102, 116 (2d Cir. 2000), the outcome of the trial would have been the same had Afriyie received the instruction he sought.

Second, Afriyie argues that the district court failed to instruct the jury that the burden of proof remained on the government at all times, and thus it failed to convey his theory-of-the-defense instruction. Afriyie did not object or renew his request for his submitted instruction following the charge conference. Accordingly, we review only for plain error. *See Crowley*, 318 F.3d at 412-14. At trial, the court instructed the jury:

> If the government proves beyond a reasonable doubt . . . that the defendant engaged in an insider trading scheme, it must then prove that the defendant engaged in that scheme knowingly, willfully, and with intent to defraud MSD Capital . . . . It is for you to determine whether the government has established beyond a reasonable doubt such knowledge and intent on the part of the defendant.

> Because an essential element of the crime charged is intent to defraud, good faith on the part of the defendant is a complete defense to the charge of insider trading. That is, the law is not violated if the defendant held an honest belief that his acts were proper and not [in] furtherance of any unlawful scheme. A person who acts on a belief or reason honestly held that turns out to be wrong is not punishable under these statutes.

App'x at 55-57.

There was no error. "[T]he district court must advise the jury in unambiguous terms that the government at all times bears the burden of proving beyond a reasonable doubt that the defendant had the state of mind required for conviction on a given charge." *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017). The district court did so here. *See* App'x at 55-57; *see also* App'x at 30 ("[T]he burden remains on the government to prove all elements of each offense beyond a reasonable doubt."). Furthermore, as detailed above, the district court explained that "good faith on the part of the defendant is a complete defense," App'x at 56-57, thus conveying Afriyie's theory that he lacked knowledge that he was trading based on MNPI. There was therefore no error in the district court's good faith instruction.

## II. Admission of Lay Testimony

"We review evidentiary rulings for abuse of the district court's broad discretion, reversing only when the court has acted arbitrarily or irrationally." *Nektalov*, 461 F.3d at 318 (internal quotation marks omitted). Where, as here, the defendant did not object, we review only for plain error. *See United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012).

11

Afriyie challenges the admission of nonexpert testimony on whether certain information provided by Apollo was nonpublic; the likelihood of the Apollo-ADT deal; and projections of Apollo's pricing of ADT stock. To begin, Afriyie asserts that MSD employee-witness Sharmit Grover "was permitted, without basis, to offer expert opinions about documents, usurping the jury's province and calling them 'material' or 'nonpublic' when the documents were created by or for *Apollo* and consequently the witness[] had no basis for the opinions." Appellant's Br. at 35.

"The Federal Rules of Evidence allow the admission of fact testimony so long as the witness has personal knowledge, while opinion testimony can be presented by either a lay or expert witness." *United States v. Cuti*, 720 F.3d 453, 457-58 (2d Cir. 2013) (citations and footnote omitted). "[T]he distinction between statements of fact and opinion is, at best, one of degree." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 168 (1988). "[P]ersonal knowledge of a fact is not an absolute to Rule 602's foundational requirement, which may consist of what the witness thinks he knows from personal perception. Similarly, a witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior." *Cuti*, 720 F.3d

12

458-59 (internal quotation marks and citation omitted). If the witness is not testifying as an expert, the witness' opinion is limited to those opinions which are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.  An employee's testimony "grounded in" an investigation he undertook in his role as an employee is admissible under Rule 701; to the extent the employee's testimony reflects "specialized knowledge [resulting from] extensive experience," however, it is not. *Bank of China v. NMB LLC*, 359 F.3d 171, 181-82 (2d Cir. 2004).

Grover is a managing director at MSD Partners, an entity related to MSD Capital, and he worked on the Apollo-ADT transaction.[3] Grover testified that around January 2016, Apollo entered into a nondisclosure agreement with MSD and had confidential discussions with Grover and others about whether MSD would provide financing for the acquisition. Grover reviewed many nonpublic documents as part of his work determining whether MSD should provide financing. He testified that the nonpublic deal documents were saved on MSD's

---

[3] We refer to both entities collectively as "MSD."

13

shared drive. Grover further explained how he used and evaluated the documents in evaluating the economics of the proposed transaction.

The documents about which Grover testified were already in evidence because they were introduced by an MSD IT specialist who retrieved them from the shared drive. Furthermore, Grover testified based upon his firsthand participation in the evaluation of the potential transaction. Therefore, the district court did not err in permitting Grover to testify as to whether certain information was nonpublic.

With respect to Grover's testimony regarding the likelihood of the Apollo-ADT deal and his projections of Apollo's pricing of ADT stock, Grover referred to his firsthand participation in the evaluation of the potential transaction. Unlike in cases cited by Afriyie, Grover had contemporaneous involvement with the transactions at issue, *compare with Bank of China*, 359 F.3d at 181-82; he explained how he compiled the summary chart, *compare with United States v. Citron*, 783 F.2d 307, 316-17 (2d Cir. 1986); and he did not provide his opinion as to Afriyie's role in the charged fraud, *compare with United States v. Groysman*, 766 F.3d 147, 158-62 (2d Cir. 2014).

14

Nevertheless, Grover's testimony about the investigation he undertook in his role as an employee also referred to his specialized knowledge. For example, when asked whether "[i]n [his] *experience*, there are instances in which a private equity firm may say one thing publicly and do a different thing privately," Grover responded, "Yes . . . . [S]aying that transactions are difficult to do [is intended to make] sellers . . . reduce their expectations on sale price . . . . It's the . . . type of dynamic that plays out in the investments world." Trial Tr. at 489-90 (emphasis added). Similarly, Grover testified that his analysis of Apollo's pricing of ADT stock was "the type of analysis that an analyst would perform," and that his underlying assumptions—including assumptions regarding fees and expenses, as well as estimates of the number of outstanding ADT purchase options—were "commonly used metrics in the industry." Trial Tr. at 511-12.

Although Grover's testimony at times noted or was colored by his specialized knowledge, any error in admitting it was not plain. The government presented overwhelming evidence that Afriyie had accessed MSD's confidential information regarding ADT before making the trades at issue, and Grover's opinion about how these documents could have helped Afriyie commit insider trading merely went toward explaining an internal process. The jury could

15

readily have determined that Afriyie used confidential information to fraudulently trade, even if the precise ways in which he used that information were unclear. Because any error was not plain and did not affect Afriyie's substantial rights, we affirm.

## III.   Loss and Forfeiture

"We review the district court's factual findings at sentencing for clear error, bearing in mind that the standard of proof at sentencing is a preponderance of the evidence." *United States v. Cacace*, 796 F.3d 176, 191 (2d Cir. 2015) (internal quotation marks omitted). Afriyie argues that, at minimum, his case should be remanded for resentencing proceedings because he "was sentenced as if it were a certainty that the jury convicted on every transaction," which "infected the sentencing record as to loss calculations, forfeiture, and restitution." Appellant's Br. at 45.

## A.  Loss Calculation

The Presentence Report determined that a 16-level enhancement applied because Afriyie's insider-trading gain was $1.53 million. *See* U.S.S.G. §§ 2B1.4(b)(1) and 2B1.1(B)(1)(I). This figure, $1.53 million, is the profit Afriyie made by selling the ADT call options. Afriyie objected to the loss calculation. Because

the jury returned a general verdict, he argued, first, the district court should have enhanced his sentence only for the smallest gain he made on a single trade, and second, if the district court were to consider all of his trades as relevant conduct, it should have applied a clear and convincing evidentiary standard.

At sentencing, the district court, agreeing with the Presentence Report, found that the evidence reflected a $1.53 million gain. The district court discussed two reasons in particular underlying its conclusion as to loss:

> I am not persuaded by that argument [that the court is limited to considering only the gain attributed to the trade that yielded the smallest gain] for two independent reasons: First, at sentencing the Court is to make an independent calculation of how the guidelines apply. Here, even on the theory that the defense posits that the jury found Mr. Afriyie guilty based on just one trade and did not base its guilty verdict on any other trades, the Court finds based on the overwhelming evidence at trial that this was a unitary scheme. Every trade by Mr. Afriyie in [ADT], every one of the exotic call options that he customized and purchased was based on . . . MNPI that he had obtained from MSD's database; to wit, information that Apollo planned [to acquire] ADT at a significant stock price premium.
>
> The Court finds without any hesitation that each and every one of those trades occurred when Mr. Afriyie was in possession of that MNPI and that that confidential and highly material and market-moving information was the impetus for each and every one of Mr. Afriyie's purchase of call options. And, of course, after the announcement of the Apollo-ADT transaction, those call options were very much in the money and proved to be extremely valuable, and Mr. Afriyie exercised them.

17

. . . .

> The second reason—and again, it's independent of the first—is that the jury's forfeiture finding compels the same result. That finding was made by a preponderance of the evidence. That is the same standard that governs the Court's guidelines determination as to gain. The jury found that the full $1.53 million represented gains from the insider trading scheme, and it did so in the face of the same argument made here, which is that the information known to Mr. Afriyie and known to the public were at times of the different trades. So, the bottom line, the Court finds a 16-level upward adjustment for gain to be appropriate.

App'x at 99-101.

Afriyie relies on *United States v. Sturdivant*, 244 F.3d 71 (2d Cir. 2001) to argue that where a jury returns a general verdict, "sentencing must be based on the least punitive possible verdict." Appellant's Br. at 46. But here, unlike in *Sturdivant*, the district court did not "erroneously assume[] that [the] defendant had been convicted based on" multiple transactions. *Sturdivant*, 244 F.3d at 77. Instead, the district court acknowledged the general verdict and cited two independent bases for its calculation: the evidence at trial and the jury's forfeiture verdict. The loss calculation was not clearly erroneous; indeed, remanding for resentencing would simply require the district court to reiterate the determinations that it already has made.

18

## B. Forfeiture Calculation

Afriyie next asserts that the "same flaws" as to the loss calculation "afflicted the forfeiture determination albeit more profoundly." Appellant's Br. at 49. We disagree.

"[18 U.S.C.] § 981(a)(2)(B) supplies the definition of 'proceeds' in cases involving fraud in the purchase or sale of securities." *United States v. Contorinis*, 692 F.3d 136, 145 n.3 (2d Cir. 2012). Pursuant to Section 981(a)(2)(B), "[t]he definition of proceeds for insider trading violations is the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services." *Id.* at 145 (internal quotation marks omitted). "In any case tried before a jury, if the indictment or information states that the government is seeking forfeiture, the court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict." Fed. R. Crim. P. 32.2(b)(5)(A).

In the forfeiture phase of the trial, the court issued the following jury instruction, to which Afriyie did not object:

> The term "proceeds" means the amount of money acquired through the illegal transaction or transactions engaged in by the defendant,

19

less the direct costs he incurred in engaging in this transaction or transactions.

The proceeds of transactions that you do not determine to constitute insider trading, if any, are, of course, not proceeds of crimes. Your determination at this stage of whether a particular transaction constitutes insider trading by the defendant, is governed by the preponderance of the evidence standard.

. . . .

Assets purchased with crime proceeds are forfeitable even if they increase or appreciate in value, to grow greater than the original monies obtained from the crime. Where the present balance of a particular account is attributable to the appreciation made from the criminal proceeds in that account, the assets and funds in that account constitute or are derived from fraud proceeds and, therefore, are forfeitable.

App'x at 76-77, 79. The jury then received a forfeiture special verdict form, which required it to make specific findings as to the funds in the savings and brokerage accounts and whether the money in those accounts constituted proceeds directly or indirectly obtained as a result of the convictions on Counts One and Two. The jury had to indicate whether the full amount of funds, or some lesser portion, was forfeitable. It concluded that the full amount was derived from the proceeds of Afriyie's crimes.

The district court imposed forfeiture in the amount of $2,780,720.02. This amount represents $2,632,893.39, which is the liquidated value of the assets

formerly held in the brokerage account and seized on May 16, 2016, together with $147,826.63, the amount of proceeds of the offenses wired from the brokerage account into the savings account between February 17 and March 24, 2016.

Afriyie's key challenge on appeal concerns the appreciated value. As noted above, proceeds here include "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services." *Contorinis*, 692 F.3d at 145 (internal quotation marks omitted). The jury instruction as to "proceeds" was thus correct. Afriyie goes on to argue, however, that insider-trading forfeiture is limited to the funds acquired through illegal transactions and excludes any appreciation of those funds.

Under 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c),[4] a defendant convicted of insider trading must forfeit "[a]ny property, real or personal, which constitutes *or is derived from* proceeds traceable" to the offense. 18 U.S.C. § 981(a)(1)(C) (emphasis added). We have yet to squarely address the import of "derived from" as it relates to appreciated value in an insider-trading

---

[4] "While § 981(a)(1)(C) is a civil forfeiture provision, it has been integrated into criminal proceedings via 28 U.S.C. § 2461(c). This roundabout statutory mechanism allows a court to order forfeiture in criminal securities fraud proceedings." *Contorinis*, 692 F.3d at 145 n.2.

21

scheme. *Cf. United States v. Kalish*, No. 6-cr-656(RPP), 2009 WL 130215, at *6 (S.D.N.Y. Jan. 13, 2009) ("[I]t is a fair conclusion that the present balance in the Lehman Brothers account is attributable to appreciation made from the TFS proceeds in various investment accounts. Therefore, this Court finds that the entire $2.4 million in assets currently in the Lehman Brothers account constitutes or was derived from fraud proceeds and thus is forfeitable."), *aff'd*, 626 F.3d 165, 168 (2d Cir. 2010).

We hold that as a matter of law, forfeiture may extend to the appreciation of funds acquired through illegal transactions in an insider-trading scheme. There is simply no basis in the text to conclude, as Afriyie argues, that Section 981(a)(2), which defines "proceeds," restricts Section 981(a)(1)(C) from applying to funds that have appreciated in value. A defendant convicted of insider trading must forfeit property "which constitutes . . . proceeds," 18 U.S.C. § 981(a)(1)(C), defined as "the amount of money acquired through the illegal transactions," *id.* § 981(a)(2)(B). Thus, if Section 981(a)(1)(C) applied only to property "which constitutes . . . proceeds," Afriyie's argument may have teeth. But the text provides that a defendant convicted of insider trading must *also* forfeit property which is "derived from proceeds traceable" to the offense. *Id.* § 981(a)(1)(C). The

22

plain text compels our conclusion that a defendant convicted of insider trading

must forfeit the appreciation of funds acquired through illegal transactions in an

insider-trading scheme, because such funds are "derived from proceeds

traceable" to the offense. *Id.*

Afriyie's final two arguments urging us to conclude the contrary are

unavailing. First, he argues that this Court should apply the rule of lenity

because "proceeds" is ambiguous. This is because, Afriyie argues, Section

981(a)(2)(B) "strictly limits 'proceeds' to 'the amount of money acquired through

the illegal transactions . . . less the direct costs incurred in providing the goods

or services,'" while Section 981(a)(2)(A) "extends 'proceeds' to include 'property

of any kind obtained directly or *indirectly*, as the result of the commission of the

offense.'" Appellant's Reply Br. at 24 (alteration in original) (quoting 18 U.S.C. §

981(a)(2)). According to Afriyie, Congress wanted "indirect" acquisition to apply

under Section 981(a)(2)(A), but not Section 981(a)(2)(B). For the reasons above,

however, it cannot be said that "after seizing everything from which aid can be

derived, we can make no more than a guess as to what Congress intended," such

that the rule of lenity applies here. *Reno v. Koray*, 515 U.S. 50, 65 (1995) (citation

and internal quotation marks omitted).

23

Second, Afriyie argues that when defense counsel indicated that Afriyie accepted the verdict but wanted to testify that certain trades were not insider trading, the government "threatened [him] with a perjury enhancement" and thus "he was intimidated into only testifying as to forfeiture calculation rather than specific trades as intended." Appellant's Reply Br. at 27. This, Afriyie asserts, mandates retrial on forfeiture.

"[A] defendant pressing such a claim must show bad faith on the part of the government." *United States v. Williams*, 205 F.3d 23, 29 (2d Cir. 2000). "[I]n order to elevate this misconduct to a due process violation, the defendant must demonstrate that the absence of fundamental fairness infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Id.* at 29-30 (internal quotation marks omitted). Here, there is no indication that the precautionary statements about perjury rose to the level of intimidation. Afriyie has failed to show bad faith or the absence of fundamental fairness with respect to such precautions, and we affirm the district court's calculation of forfeiture.

## IV.    Restitution

The district court ordered that Afriyie pay $663,028.92 in restitution to his former employer, MSD. This amount "correspond[ed] to expenses [MSD]

24

incurred as a result of its participation in investigations into, and the eventual

trial concerning, Afriyie's insider trading while working as an analyst at MSD."

Order of Restitution at 1, ECF No. 178.[5] After Afriyie's sentencing, the Supreme

Court issued its decision in *Lagos v. United States*, 138 S. Ct. 1684 (2018). In *Lagos*,

the Court interpreted the Mandatory Victims Restitution Act and held that a

private firm's legal fees as to a corporate victim's private investigation and

related civil case were not compensable as "necessary" restitution. *Id*. at 1688-89.

Afriyie submitted a supplemental brief addressing *Lagos* and seeking remand to

determine the correct restitution amount. The government "consents to a limited

remand to allow the District Court to determine whether certain categories of

expenses encompassed in the original restitution award were incurred 'during

participation in the investigation or prosecution of the offense,' 18 U.S.C. §

3663A(b)(4), consistent with the Supreme Court's guidance in *Lagos*." Appellee's

Br. at 58-59. Accordingly, remand to recalculate restitution is appropriate.

---

[5] Although the district court held at Afriyie's sentencing hearing that MSD was
entitled to $691,046.62 in restitution, MSD "voluntarily disclaimed restitution for
expenses associated with counsel's monitoring of, and attendance at,
proceedings in this case." Order of Restitution at 2, ECF No. 178. Accordingly,
MSD sought $663,028.92, rather than $691.046.42. *Id*.

## CONCLUSION

We have considered the remainder of Afriyie's arguments and find them to be without merit. For the foregoing reasons, the judgment of conviction and order of forfeiture are hereby AFFIRMED, the restitution order is VACATED, and the case is REMANDED.

## **Certification Pursuant to Rule 32(a)(7)**

Robert A. Culp, counselor for appellant John Afriyie hereby certifies that according to the word count function of the word processing program used to prepare the accompanying petition, this petition contains 3896 words, exclusive of the table of contents, table of authorities and signature page information.

s/ Robert A. Culp
Robert A. Culp